983 F.2d 1069
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Bradford JOHNSON and, Ryan Marlowe Johnson, Defendants-Appellants.
 No. 92-1171.
 United States Court of Appeals, Sixth Circuit.
 Dec. 15, 1992.
 
 Before KENNEDY, BOYCE F. MARTIN, Jr. and SUHRHEINRICH, Circuit Judges.
 PER CURIAM:
 
 
 1
 Defendants Bradford Johnson and Ryan Marlowe Johnson appeal their jury convictions for conspiracy to distribute narcotics, possession with intent to distribute cocaine base and cocaine powder, aiding and abetting, using firearms in relation to drug trafficking, possession of firearms, and drug trafficking within 1,000 feet of an elementary school. Defendants contend that the District Court erred in refusing to suppress evidence discovered in the search which led to their arrests, in allowing questioning by the prosecutor which implied wrongdoing on the part of defense counsel, in denying their motion to acquit on the firearms charges, and in erroneously admitting lay opinion testimony. Because we find the first three contentions to be without merit and the error committed in allowing admission of lay opinion testimony to be harmless, we AFFIRM.
 
 I.
 
 2
 In early August 1991, Bureau of Alcohol, Tobacco, and Firearms ("ATF") agents monitored several phone calls between Lawayous Robinson and defendants Bradford and Ryan Johnson in which Robinson arranged to purchase cocaine from the defendants. Defendants were at the home owned by their parents, at 18501 Greenlawn in Detroit ("Greenlawn") while making the calls. Bradford Johnson lived at the house on Greenlawn. While Ryan Johnson had moved out the previous month, he had keys to the home and had been there on a number of occasions since moving out. The calls between Robinson and defendants referred to specific amounts and prices. During the final call, on August 6, 1991, Robinson led defendants to believe he was on his way to Greenlawn to purchase cocaine. Instead, ATF agents executed a search warrant. Ryan Johnson attempted to flee to the second floor of the house but was stopped at the top of the stairs. The ATF agents found 50 grams of cocaine powder and 50 grams of crack cocaine in his pockets. At that time, Ryan Johnson gave a false name to the ATF agents. A search of the house revealed a semi-automatic pistol under the seat cushion of a chair in the front room and an assault rifle in the basement, in full view next to a large metal-top table covered with cocaine residue, single-edged razor blades, cut marks, and plastic bags. In the kitchen, the ATF agents found a scale of a type typically used to weigh cocaine and a vial containing 14 grams of a substance commonly used to cut cocaine. Bradford Johnson was arrested as he returned to Greenlawn a short time after the execution of the warrants. Defendants' parents were on vacation at the time the deal was negotiated, coming home after the execution of the search warrant and arrests.
 
 
 3
 On November 7, 1991, a jury convicted defendants on all seven counts of their indictment. The District Court then sentenced each defendant to 300 months under the United States Sentencing Guidelines. This appeal followed.
 
 II.
 
 4
 Defendants first contend that in issuing the search warrant which led to their arrests, the magistrate judge did not have an adequate basis for probable cause and that the ATF agents should not have relied on the resulting warrant. Issuing a search warrant is appropriate when in light of all the circumstances presented to the magistrate judge, including the strength of the evidence and credibility of the sources of information, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). In reviewing a magistrate judge's finding of probable cause to issue a warrant, a reviewing court must give the magistrate judge's decision great deference, reviewing simply to determine whether the magistrate judge's finding has a "substantial basis." Id. at 238-39. In reviewing the execution by law enforcement officers of a facially valid search warrant, a court should not exclude evidence obtained through the warrant if the law enforcement officers relied on the warrant reasonably and in good faith. United States v. Leon, 468 U.S. 897, 922-23 (1984). We review this latter issue de novo. United States v. Bowling, 900 F.2d 926, 930 (6th Cir.), cert. denied, 111 S.Ct. 109 (1990).
 
 
 5
 Defendants point to nothing in the record which would indicate that the ATF agents' reliance on the search warrant was not in good faith or not reasonable. In regard to the validity of the warrant itself, we find a more than substantial basis for the magistrate judge's decision. The ATF agents based their affidavit applying for the warrant on information from a named source, Lawayous Robinson. Robinson had been at the location to be searched on at least ten occasions in May 1991. He had observed defendants involved in drug trafficking at the location, and, most importantly in regard to the magistrate judge's issuance of the warrant, he had described the place in great detail. The ATF agents verified that the address and phone number matched, and surveillance revealed a person matching Ryan Johnson's description entering and exiting the location.
 
 
 6
 Defendants also argue that the information providing the basis for searching the house for weapons was stale, since the visits by Robinson in which he saw the weapons had occurred several months before issuance of the warrant. Analyzing the staleness of information forming the basis of a warrant requires considering whether the information generally indicates an isolated incident or a course of conduct which may be continuing at the time of the issuance of the warrant and also requires considering whether the older information is corroborated by more current information. See United States v. Henson, 848 F.2d 1374, 1381-82 (6th Cir.1988), cert. denied, 488 U.S. 1005 (1989). The information forming the basis of the probable cause determination in the present case consisted of Robinson's statements that in May he observed a number of drug transactions at the house and that the weapons for which the police would search had been present and visible during these transactions. When coupled with the August phone calls corroborating that defendants continued to deal in drugs, his information indicates a course of conduct rather than merely an isolated incident. There was no indication that defendants had changed their practice of keeping the weapons available. Thus, the magistrate judge had a substantial basis for finding probable cause to issue a warrant, and the ATF agents' reliance on it was reasonable and in good faith.
 
 III.
 
 7
 Defendants' second contention is that the District Court erred in allowing a question of a witness which implied wrongdoing on the part of defense attorneys. During cross-examination of defense witness Leonard Brantley at trial, the prosecution questioned the accuracy of Brantley's memory. The prosecution was attempting to show that Brantley's memory was better on facts favorable to the defense and worse on facts favorable to the prosecution. As the questioning progressed, the following colloquy occurred in reference to Brantley's affidavit given to defense counsel:
 
 
 8
 Q: Oh, so you talked to them and they gave you the information and then you swore to it and said this is what happened?
 
 
 9
 [Defense Counsel]: Your Honor, I am going to object to all this characterizing, making a speech. Let him ask the question.
 
 
 10
 The Court: This is proper cross examination.
 
 
 11
 Q: Answer the question.
 
 
 12
 A: I forgot what it was, sir.
 
 
 13
 Q: So you talked to them and they told you what to say and then you swore to it in this affidavit?
 
 
 14
 A: No, they didn't tell me what to say at all.
 
 
 15
 As a threshold issue, we hold that defendant failed to preserve this issue for appeal and thus the appropriate standard of review is plain error. Federal Rule of Evidence 103(a)(1) requires that a timely objection be made stating specific grounds. In order to preserve an issue on appeal, this objection must be on the proper grounds. United States v. LeBlanc, 612 F.2d 1012, 1016-17 (6th Cir.), cert. denied, 449 U.S. 849 (1980). While an objection was made when the government asked the question, there is no indication the objection had any nexus to the allegation of error in the present appeal. The trial objection was to the form of the prosecutor's question, that he was "making a speech" and "characterizing." The error alleged on appeal, on the other hand, is to the substance of the prosecutor's question. As a result, we review the District Court's admission of the testimony and decision not to issue a curative instruction only for plain error. FED.R.CRIM.P. 52(b); FED.R.EVID. 103(d). Plain error is found "only in exceptional circumstances, and solely to avoid miscarriage of justice." United States v. Cox, 957 F.2d 264, 267 (6th Cir.1992) (quoting United States v. Hook, 781 F.2d 1166, 1172 (6th Cir.), cert. denied, 479 U.S. 882 (1986)).
 
 
 16
 Defendants' theory is that because this question alleges wrongdoing on the part of defense counsel, it created a conflict of interest depriving defendants of the effective assistance of counsel guaranteed by the Sixth Amendment. As an example of such a situation, defendants cite United States v. Cancilla, 725 F.2d 867 (2d Cir.1984). In Cancilla, the Second Circuit reversed the conviction of a defendant whose trial counsel, it turned out after trial, had been criminally involved in the same scheme for which the defendant had been convicted. In reversing, that court was concerned that such trial counsel might not present a vigorous defense--fearing that to do so would reveal his own culpability--creating a conflict of interest between attorney and client. In fact, the court noted that on advice of counsel the defendant had decided not to present a defense.
 
 
 17
 The present case is a far cry from Cancilla. The only implication of wrongdoing on the part of defense counsel comes from the question asked by the government during cross examination of a single witness. That witness denied the allegation and the questioning moved on. On redirect examination counsel for defendants clarified that defense counsel had made no suggestions and provided no information. No conflict of the type theorized by defendant developed. Not even the threat of further investigation existed. Because the question by the prosecutor was no more than routine cross-examination of a defense witness, it cannot qualify as the "exceptional circumstances" required for reversal.
 
 IV.
 
 18
 Defendants' third contention is that the District Court erred in denying their motion for acquittal of the firearms charges under 18 U.S.C. § 924(c). We review such a claim viewing the evidence in the light most favorable to the government to determine whether any rational trier of fact could have found guilt beyond a reasonable doubt. United States v. Acosta-Cazares, 878 F.2d 945, 951 (6th Cir.), cert. denied, 493 U.S. 899 (1989). The crucial inquiries are whether the guns found at Greenlawn could have been found to have been "use[d]" by defendants "during and in relation to ... drug trafficking." 18 U.S.C. § 924(c)(1). Under the "fortress analogy" theory adopted by this Circuit, if firearms are in a defendant's actual or constructive possession, are on premises under his control, and protect or facilitate the criminal undertaking, they may satisfy the "in relation to" requirement. Acosta-Cazares, 878 F.2d at 952; United States v. Henry, 878 F.2d 937, 944 (6th Cir.1989). Where, as here, the weapons are "readily accessible," the requirement is satisfied.
 
 V.
 
 19
 Defendants' final contention is that the District Court erred in allowing their mother, Patricia Beatty, to testify of her suspicions as to how Ryan Johnson acquired the money to pay his bills. During the cross-examination of Beatty, the following colloquy took place:
 
 
 20
 Q: Do you have a theory about how [your son, Ryan Johnson,] might be able to pay for those bills if he doesn't have a job?
 
 
 21
 [Defense Counsel]: I am going to object to asking a witness about a theory, your Honor. Those questions are not pertinent.
 
 
 22
 The Court: She may ask the question. It is a proper question.
 
 
 23
 Q: If you know. You may not know.
 
 
 24
 A: What was the question?
 
 
 25
 Q: I was just wondering if you knew how he would pay for those bills if he wasn't working?
 
 
 26
 A: Well, if I didn't know the amount, because I didn't open them so I had no idea what the amount of them were, so I never thought about it one way or the other.
 
 
 27
 Q: So you don't know basically how he was paying his bills when he was living on his own?
 
 
 28
 A: I have suspected but I know--I mean I knew nothing.
 
 
 29
 Q: What have you suspected?
 
 
 30
 A: I think I--
 
 
 31
 [Defense Counsel]: I will object.
 
 
 32
 A: I will not incriminate myself or them in any way and I feel that that is a very incriminating question so I refuse to answer it.
 
 
 33
 The Court: You can't refuse to answer, witness. If there is an objection and I sustain it--
 
 
 34
 [Defense Counsel]: I object to what is suspected, your Honor.
 
 
 35
 The Court: Just a minute. What is your question?
 
 
 36
 [Prosecution]: My question, your Honor, she had--
 
 
 37
 The Court: There is nothing pending.
 
 
 38
 [Prosecution]: She had said that she had suspicions about how they would pay for those bills and I had asked her what her suspicions were.
 
 
 39
 [Defense Counsel]: Where are suspicions relevant?
 
 
 40
 The Court: She opened the door herself. She is the one who said she had suspicions. She may answer the question.
 
 
 41
 Q: We understand that it is just your suspicion. What were your suspicions?
 
 
 42
 A: Drugs.
 
 
 43
 [Prosecution]: No further questions.
 
 
 44
 Defendants argue that the admission of Beatty's testimony violates Federal Rule of Evidence 701 as lay testimony in the form of an opinion. The government responds by asserting, first, that defendants did not properly object and therefore preserve the issue for appeal and, second, that Beatty herself opened the door for the question.
 
 
 45
 Defendants' objection, while not as well articulated as it might have been, sufficiently put the court and opposing counsel on notice of the nature of the problem with the inquiry. See United States v. Gomez-Norena, 908 F.2d 497, 500 (9th Cir.1990) (stating the purpose of objection requirement is to ensure judge and opposing counsel are aware of error and able to respond appropriately). Defendants clearly were objecting to the substance of the response called for by the question. At least once counsel objected in a way which essentially encapsulates the argument made to this Court on appeal, stating "I am going to object to asking a witness about a theory, your Honor." To require anything more in order to preserve an issue on appeal would be to ignore the rapid pace with which courtroom evidentiary issues are, and should be, handled. Thus, because an adequate objection was raised at trial, defendant preserved the issue for appeal.
 
 
 46
 We cannot agree that Beatty opened the door. She mentioned that she had an opinion as a means of explaining her refusal to answer the question, stating that she had no actual knowledge of the factual basis for the opinion she was being asked to offer. It is difficult to see how a defense witness's statement which clearly discloses that what she will say next is inadmissible somehow makes that testimony admissible, especially when the witness's hesitation is followed immediately by the appropriate objection by defense counsel.
 
 
 47
 Under Federal Rule of Evidence 701, opinion testimony by a non-expert witness is admissible if "rationally based on the perception of the witness." Thus, a mother's opinion as to how her son paid his bills might be admissible if it was well-founded in personal knowledge. In the present case, however, Beatty explicitly and specifically stated that she had no knowledge of her son's finances. While the District Court, in admitting her opinion testimony, could have chosen to disbelieve her disavowal of knowledge if confronted with contradictory evidence, it was presented with no such evidence. In view of the lack of foundation for the opinion in personal perception, that she possessed no first-hand experience with her son's expenses, admission of Beatty's testimony was error.
 
 
 48
 In light of the strength of the government's case against Ryan and Bradford Johnson, however, even such damaging testimony as a mother's testimony on an ultimate issue of guilt of drug trafficking is harmless error. Errors at trial do not require reversal if they are harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 22 (1967); Coury v. Livesay, 868 F.2d 842 (6th Cir.1989). Here, the government's search revealed cocaine in the possession of one defendant and the full range of implements of distribution on the premises. Telephone calls of both defendants arranging the sale had been monitored by ATF agents and presented to the jury. The standard to be applied to determine whether the error is harmless is that of United States v. Hastings, 461 U.S. 499 (1982). Under Hastings, the question is whether it is clear beyond a reasonable doubt that the jury would have returned a verdict of guilty in the absence of the erroneously admitted evidence. Id. at 510-11. Here, in view of the overwhelming evidence of guilt, the District Court's admission of Patricia Beatty's speculation was harmless error beyond a reasonable doubt.
 
 VI.
 
 49
 For the reasons stated above, we do not find errors to have been committed according to defendants' first three contentions and find the error committed according to the fourth to be harmless. Therefore, we AFFIRM.