Moses A. COURY, Petitioner–Appellant,

v.

Gary LIVESAY, Warden and W.J. Michael Cody, Attorney General, Respondents–Appellees.

No. 88–5373.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 12, 1988.

Decided Feb. 23, 1989.

Martin Lieberman (argued), Thomas A. Thinnes, and Thomas A. Thinnes, P.A.,

Phoenix, Ariz., for Moses A. Coury, petitioner-appellant.

Kathy M. Principe, Jerry Smith, and C. Anthony Daughtrey (argued), Asst. Attys. Gen., Office of the Atty. Gen. of Tennessee, Nashville, Tenn., for Gary Livesay, Warden and W.J. Michael Cody, Atty. Gen., respondents-appellees.

Before MILBURN and NORRIS, Circuit Judges, and SUHRHEINRICH, District Judge.*

SUHRHEINRICH, District Judge.

On September 24, 1983, after a trial by jury, Moses A. Coury ("petitioner") was convicted in the Criminal Court for the County of Williamson, Tennessee of assault from ambush with a deadly weapon in violation of Tenn.Code Ann. § 39-2-107. This conviction was upheld by the Tennessee Court of Criminal Appeals. After appeal was denied to the Tennessee Supreme Court, petitioner filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 which was denied by the district court below. 707 F.Supp. 961. Petitioner then filed a timely appeal to this Court. For the reasons stated below, we affirm.

I.

*Bystander Juror Selection Process*

Petitioner first contends he was denied his Sixth Amendment right to a fair and impartial jury by reason of the juror selection process employed at trial. At petitioner's trial, jury selection encompassed two days. On the second day of *voir dire*, the jury venire was exhausted prior to empaneling sufficient jurors. After considering several options for obtaining additional prospective jurors, the trial judge, in accordance with Tennessee law,[1] ordered Sheriff Williams to summon additional jurors from the community. Sheriff Williams instructed Captain John Easley, Jr. to fill the court's order. Captain Easley in turn delegated the responsibility for selecting bystander jurors to the Civil Warrant Division.

In executing this directive, the Warrant Division apparently went to a local bank, as the first group of standby jurors were all in the banking business. After petitioner objected, the trial judge ordered the Sheriff to obtain additional jurors. Two additional groups of standby jurors were acquired; the first group was all women, and the second group was employees of local manufacturing firms. Only one individual selected through the bystander method actually served on defendant's jury; two others were selected as alternates, but were dismissed prior to the commencement of jury deliberations.

The propriety of the bystander juror selection procedure has not been addressed by either this Circuit or the United States Supreme Court. The only federal authority comes from the Eighth Circuit in cases dealing with Missouri's similar bystander selection method. In the first of these cases, *Henson v. Wyrick*, 634 F.2d 1080, 1084-85 (8th Cir.1980), *cert. denied*, 450 U.S. 958, 101 S.Ct. 1417, 67 L.Ed.2d 383 (1981), the Eighth Circuit found that the defendant's constitutional rights were violated where the sheriff personally selected his acquaintances to complete the venire panel. In *Henson*, the sheriff would go through a phone book or a prepared list and select people he knew to be "regular citizens [and] high standard people...."

---

* Honorable Richard F. Suhrheinrich, United States District Judge for the Eastern District of Michigan, sitting by designation.

1. The relevant statute, Tenn.Code Ann. § 22-2-308(a)(2), provides:

In the event by reason of the disqualification of proposed jurors, or other cause, the required number of jurors cannot be obtained from said venire, the clerk of the court shall produce in open court the jury box and said box shall be opened by the court and there shall be drawn therefrom as directed by the court, the number of names deemed by the judge sufficient to complete the juries. This process shall, if necessary, continue until the grand and petit juries are completed; but the judge of said court instead of following said last mentioned procedure day, if he shall deem proper, furnish a sufficient number of names of persons to be summoned to the sheriff, or *said judge may, if he thinks proper, direct the sheriff, to summon a sufficient number to complete said juries.* (Emphasis added.)

*Id.* at 1081. The venire panel in *Henson* included fourteen of the sheriff's hand-picked acquaintances, seven of whom eventually served on the twelve person jury. The Eighth Circuit, in finding a constitutional violation, stated, "[w]here, as here, the jurors are picked according to the Sheriff's subjective rather than objective criteria, the opportunity for the sheriff to express his allegiance to the prosecution by selecting sympathetic jurors is unlimited." *Id.*

In *Holt v. Wyrick,* 649 F.2d 543, 546 (8th Cir.1981), *cert. denied,* 454 U.S. 1143, 102 S.Ct. 1002, 71 L.Ed.2d 295 (1982), the court again examined the bystander juror selection procedure, finding no constitutional violation where the bystander jurors were selected, based on objective criteria, by a sheriff from a neighboring county who did not participate in the defendant's investigation. In *Anderson v. Frey,* 715 F.2d 1304, 1309 (8th Cir.1983), *cert. denied,* 464 U.S. 1057, 104 S.Ct. 739, 79 L.Ed.2d 198 (1984), the court found petitioner's due process rights were violated where the sheriff was involved in the bystander juror selection process. In *Anderson,* the sheriff, upon being ordered to summon additional jurors, contacted five deputy sheriffs to locate the prospective jurors. Neither the sheriff nor the five deputy sheriffs were involved in petitioner's investigation, however, another deputy sheriff within the same department was in charge of the investigation. Accordingly, the court imputed the sheriff's involvement in both the investigation and the juror selection, reasoning that the sheriff possessed ultimate authority over the deputies responsible. *Id.*

The *Anderson* court noted that there was no evidence of *actual* impropriety on behalf of the sheriff. *Id.* at 1309 n. 7. However, because the sheriff was involved in both the selection of the bystander jurors and the investigation of petitioner's case, the court found the *potential* prejudice to petitioner's rights to be substantial. *Id.* at 1309.

We are not persuaded that the sheriff has significantly reduced his institutional interest by delegating the actual selection of the bystander jurors to his subordinates. The sheriff is their immediate superior and can veto any of their selections.... It is the participation of an interested official in the juror selection process that is fundamentally unfair. As noted in *Henson,* neither the exercise of some discretion nor the fact that some bystander jurors, even all the bystander jurors, are acquainted with the sheriff will invalidate the conviction. We are concerned with the integrity and fairness of the method used to select the bystander jurors.

We are aware that the pressure of time and the small population in rural areas may make the selection of bystander jurors by the sheriff the more expedient method. However, we believe that fundamental fairness requires a different method of bystander juror selection.

*Id.* (footnote omitted) (citing *Henson,* 634 F.2d at 1084).

The issue of bystander juror selection was again addressed by the Eighth Circuit in *Russell v. Wyrick,* 736 F.2d 462 (8th Cir.1984), *cert. denied,* 469 U.S. 1219, 105 S.Ct. 1203, 84 L.Ed.2d 346 (1985). In *Russell,* the court, noting the apparent conflict between *Anderson* and *Holt,* rejected the argument that *Anderson* stood for the proposition that the participation of any individual possessing an institutional interest in the prosecution is sufficient to deprive petitioner of his constitutional rights. *Id.* at 464. Rather, the court found that *Holt* necessitated a case-by-case analysis to determine the objectivity of the selection criteria and the extent of the involvement of the "interested official." *Id.*

The court in *Anderson* noted that it was "the participation of an interested official" which was unfair in *Anderson.* While we agree with *Anderson* that the sheriff may have an "institutional interest" in seeing defendants convicted, *we are unwilling to conclude that the institutional interest alone is enough to deprive a defendant of his due process rights.* Were that the case, *Holt* would have been decided the other way.

*Id.* (emphasis added).

Finally, in *Cody v. Solem,* 755 F.2d 1323, 1335 (8th Cir.), *cert. denied,* 474 U.S. 833,

106 S.Ct. 104, 88 L.Ed.2d 84 (1985), a case involving South Dakota's bystander juror statute, the Eighth Circuit found no constitutional violation where a bystander juror was selected by the coroner. Although the coroner was at the scene of the crime initially and conducted an autopsy of the victim, the court found that the coroner's "minimal role, considered in a constitutional context, simply does not rise to the level of active investigation." *Id.* The court reiterated the need to prove actual prejudice in the implementation of the bystander selection process in order to establish a constitutional violation. "[I]nstitutional interest alone is not enough to deprive a defendant of a fair trial. While the potential for unfairness was certainly present at Cody's trial, 'we are unable to conclude that this potential manifested itself.'" *Id.* (quoting *Russell*, 736 F.2d at 464).

The common thread running throughout these cases establishes that where the sheriff participates in the investigation and also selects bystander jurors based on subjective criteria, the defendant's right to a fundamentally fair trial is violated, *see, e.g., Anderson, supra; Henson, supra,* however, where the individual who selects the prospective jurors was not involved in investigating the case and uses objective criteria in selecting standby jurors, the process does not deprive the defendant of his constitutional rights. *See, e.g., Cody, supra; Russell, supra; Holt, supra.* We believe this rule sufficiently protects a defendant's right to a fair and impartial trial. While the investigating officer should not be allowed to select prospective jurors, a defendant's rights are not necessarily transgressed because the potential exists that individuals responsible for obtaining additional jurors possess an institutional interest in conviction. We believe a case-by-case analysis must be made to determine the extent of any actual prejudice caused by the manner in which additional jurors are obtained.

In the instant case, we do not find the process used to select prospective jurors denied petitioner his constitutional rights. In selecting prospective jurors, individuals were chosen objectively. The ju-

rors were not chosen from a list of "approved" individuals, but rather were selected by going from business to business in a random, objective manner. Further, the investigating sheriff in the present case did not personally execute the judge's order but rather delegated this responsibility to the Warrant Division; the Warrant Division was not involved in any fashion with the investigation or prosecution of defendant. Accordingly, we find the bystander juror process as implemented in the instant case did not violate petitioner's constitutional rights.

## II.

### *Prosecutorial Comments*

Petitioner next contends that certain comments made by the prosecutor violated his right to a fair trial. Both the Court of Appeals for Tennessee and the district court found that the prosecutor's comments regarding the state's expense in bringing the case to trial, the prosecutor's personal view of the quality of the circumstantial evidence, and the prosecutor's question about whether petitioner would testify were error. However, both of these courts concluded that the error was not prejudicial in that such error was harmless beyond a reasonable doubt. We agree.

In *Chapman v. California*, 386 U.S. 18, 22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967), the United States Supreme Court held that errors at trial, even constitutional errors, do not require automatic reversal of a conviction if the error can be classified as harmless. However, "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Id.* at 24, 87 S.Ct. at 828. Thus, the analysis under *Chapman* is whether the constitutional error which occurred influenced the jury in reaching its verdict. This standard requires that an appellate court be convinced "beyond a reasonable doubt" that there is "no reasonable possibility" that the constitutional error contributed to the jury's verdict. Thus, under *Chapman*, "[the] harmless error analysis essentially involves the question of whether the error is but a 'small error[ ] or defect that [has] little, if any, likelihood of having

affected the result of the trial....' " *Eberhardt v. Bordenkircher*, 605 F.2d 275, 279 (6th Cir.1979) (quoting *Chapman*, 386 U.S. at 22, 87 S.Ct. at 827).

In the present case, the prosecutor's comments regarding the expense incurred by the state and his view of the circumstantial evidence, while error, still were relatively minor and could have had little effect on the jury. The statements occurred during the course of *voir dire*, the statements were objected to and these objections were sustained by the trial court, and the statements only tangentially relate to the question of guilt. Thus, as the district court stated, the prosecutor's misconduct in this regard was not "pronounced and persistent with a probable [consequential] cumulative effect upon the jury...." Record at 82 (quoting *Berger v. United States*, 295 U.S. 78, 89, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935)).

The prosecutor's statement questioning whether the petitioner would testify also was error. Again, however, this error was harmless beyond a reasonable doubt given that the statement was only a passing remark, not made before the jury in closing argument, or made in an otherwise especially prejudicial context. Further, substantial evidence of petitioner's guilt was produced at trial. This case is far from, for example, *Chapman* or *Eberhardt*, where the prosecutor during closing arguments made a point of emphasizing defendant's failure to testify. Here, the question was asked in the context of petitioner's exhibition of his arm to a witness and the prosecutor objected to this exhibition. Indeed, the transcript tends to indicate that any prosecutorial error in this regard was invited by petitioner's own conduct. After carefully reviewing the record, we find the comments of the prosecutor were harmless error beyond a reasonable doubt.

### III.

Accordingly, the decision of the district court, denying petitioner's requested writ of habeas corpus, is AFFIRMED.