943 F.2d 51
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Albert HARTFORD, Jr., Plaintiff-Appellant,
v.
David HASKELL, Defendant-Appellee.
 Nos. 90-2017, 90-2122.
 United States Court of Appeals, Sixth Circuit.
 Sept. 4, 1991.
 
 Before RALPH B. GUY, Jr. and RYAN, Circuit Judges, and KRUPANSKY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Petitioner-appellant, Albert Hartford, Jr. (petitioner), appealed the district court's denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Michigan prison warden David Haskell (the State) cross-appealed the district court's retroactive application of the Supreme Court's decision in Cruz v. New York, 481 U.S. 186, 107 S.Ct. 1714 (1987), to the adjudication of petitioner's constitutional claims.
 
 
 2
 Petitioner was indicted, tried, and convicted for the March 15, 1980 murder of one Darlene Ramsey (Ramsey), who on the night of her death was the cashier at Richardson's Farm Dairy Store in Clarkston, Michigan. At approximately 11:00 p.m. on the night in controversy, a masked gunman entered the store, confronted Ramsey who, seeing that the individual was armed, fled into the rear of the premises for safety, locked the door behind her, and alerted store manager Charmaine Klaus (Klaus)--who was seated at her desk--of the presence of the masked intruder. Before Klaus could summon the police on the phone, the gunman shot his way through the locked door, striking Ramsey with one of the bullets. Klaus abandoned her effort to call the police, took a .38 caliber revolver from her desk, and fired the weapon at the assailant.
 
 
 3
 The masked gunman, meanwhile, stood immediately over Ramsey, who was wounded and supine on the floor, placed his gun to her temple, and fired once from point-blank range. He then turned on Klaus, fired twice, and exited through the store's back door. Klaus was hit but was not fatally wounded; Ramsey was dead.
 
 
 4
 Physical evidence significant in both quantity and quality implicated petitioner as the individual who fired the shots that killed Ramsey. The fleeing gunman left a trail of blood that precisely matched petitioner's blood type. In the rear of the store, investigating police discovered a tooth that matched a tooth missing from petitioner's mouth at the time of his arrest. Shortly after the shooting, petitioner presented himself at a local hospital complaining of a gunshot wound to the mouth, which he claimed to have sustained as an innocent bystander to a robbery. From petitioner's mouth, physicians retrieved a bullet fragment, which they inadvertantly placed on a windowsill in petitioner's recovery room at the hospital. At petitioner's direction, his brother Michael Hartford slipped the bullet into his pocket when he (Michael) visited the convalescing patient. While driving home, Michael Hartford threw the bullet fragment from the window of his car, but later, in a remorseful moment, notified the police of the bullet's approximate location. The bullet was retrieved and ballistics analysis subsequently confirmed that it had been discharged from Klaus's revolver.
 
 
 5
 Another of petitioner's brothers, Charles Hartford, had accompanied petitioner and one other accomplice, Michael Gosciki, to the Richardson's Farm Store on the night in question. Charles Hartford, later charged with felony murder, subsequently confessed in a tape-recorded statement that he had driven with petitioner and Gosciki to Richardson's with the intention of committing the armed robbery, and remained in the car as petitioner entered the store. While recuperating in the hospital, petitioner offered a confession of his own when he voluntarily declared to Oakland County (Mich.) Sheriff's deputy Steve Allen that "if she [Klaus] hadn't shot first it never would have happened, that he blacked out after the first couple of shots after he was shot in the face and that his instincts took over and that he perceived the situation as mere survival."
 
 
 6
 Over petitioner's objection, the jury was permitted to listen to Charles Hartford's recorded confession during the Hartford brothers' joint trial in 1980. Petitioner argued that, to the extent that Charles Hartford's self-inculpatory statement tended to incriminate petitioner, it was inadmissible under Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620 (1968), because Charles Hartford, who refused to testify, was not available for cross-examination.
 
 
 7
 The state trial court, however, determined that Charles Hartford's confession was admissible because petitioner had provided an "interlocking confession" of his own. At the time of petitioner's trial, the plurality opinion of the Supreme Court in Parker v. Randolph, 442 U.S. 62, 99 S.Ct. 2132 (1979), provided that Bruton confrontation issues do not arise in cases where the defendant has furnished enforcement authorities with a confession of his own that "interlocks" with that of the non-testifying co-defendant.
 
 
 8
 In Cruz v. New York, 481 U.S. 186, 107 S.Ct. 1714 (1987), however, the Court overruled Parker by concluding that the confrontation issues addressed in Bruton are not circumvented simply because the defendant has provided an "interlocking" confession. The Court in Cruz reaffirmed its previously enunciated position that Bruton errors remain subject to harmless error analysis. Id., at 195, 107 S.Ct. at 1719 (citing Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726 (1969)).
 
 
 9
 In ruling on petitioner's habeas corpus petition, the district court determined that under Cruz the state trial court had committed error in admitting Charles Hartford's confession over petitioner's Bruton-based objection. In reaching this conclusion, the district court applied Cruz, a 1987 decision, retroactively to petitioner's 1980 trial. The district court also concluded that the resulting Bruton error was harmless in light of the overwhelming weight of damaging physical evidence implicating petitioner as the trigger man in Ramsey's death.
 
 
 10
 Without considering the district court's retroactive application of Cruz to petitioner's 1980 trial, it was correct in determining that petitioner's asserted Bruton error was harmless beyond a reasonable doubt because, when placed in the context of the unequivocal evidence implicating petitioner in Ramsey's murder, there was no reasonable possibility that the admission of Charles Hartford's confession had any material impact on the jury verdict. See Coury v. Livesay, 868 F.2d 842, 845 (6th Cir.1989) (harmless error standard "requires that an appellate court be convinced 'beyond a reasonable doubt' that there is 'no reasonable possibility' that the constitutional error contributed to the jury's verdict").
 
 
 11
 Having concluded that petitioner's Bruton and remaining assignments of error are not well taken, the judgment of the district court is AFFIRMED.