951 F.2d 350
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Destil Eugene TROXELL, Petitioner-Appellant,
v.
William C. SEABOLD, Warden, Respondent-Appellee.
 No. 90-5767.
 United States Court of Appeals, Sixth Circuit.
 Dec. 30, 1991.
 
 1
 Before KEITH and RYAN, Circuit Judges, and ALDRICH, District Judge.*
 
 
 2
 ANN ALDRICH, District Judge.
 
 
 3
 Destil Troxell appeals the district court's order denying his petition for habeas corpus. In his petition, Troxell raised three grounds for the issuance of the writ: 1) denial of his right to a fair trial; 2) denial of due process; and 3) denial of his right to conduct part of his defense. The district court rejected Troxell's second and third grounds for habeas relief, finding them to be without merit. With respect to Troxell's first argument, the district court found that the state trial court had erred in excluding certain exculpatory evidence, and that the trial court's error was of constitutional magnitude. However, the district court further found that because the trial court's error was harmless, Troxell was not denied his right to a fair trial. On appeal, Troxell challenges the district court's finding that the state trial court's erroneous exclusion of exculpatory evidence was harmless. For the following reasons, we now affirm the judgment of the district court.
 
 I.
 
 4
 Kathryn Crabtree, Jimmy Brummett, and Gary Savage were found shot to death on Christmas Eve, 1985, in Monticello, Kentucky. After an investigation, Troxell was arrested and charged with the three murders.
 
 
 5
 Much of the incriminating testimony at trial came from Darrell Rose, a friend of Troxell. Rose testified that on December 24, 1985, he and Troxell were driving around town together in Rose's car. The two purchased a fifth of vodka and picked up two friends, Bruce and William Tucker. The four men drove together to a gun store where Rose bought a .22 caliber rifle. Troxell test-fired the rifle behind the gun store. Troxell liked the rifle, so Rose traded the rifle and a partial box of shells to Troxell in exchange for $40 and a watch. The four men continued to drive around together, and Troxell directed Rose to various locations where he hoped to find Sissy Crabtree (decedent Kathryn Crabtree's daughter). Troxell was unable to locate Sissy. Finally, at Troxell's direction, Rose dropped Troxell off near the Crabtree house. Troxell left with his rifle and asked to be picked up in fifteen minutes.
 
 
 6
 Rose and the Tuckers returned to pick up Troxell, who then asked to be taken to his mother's house. On the way to Troxell's mother's house, Troxell told the three men that he had killed three people and that he would kill the men and their families if they told anyone. Troxell's stated reason for the murders was because the decedents had "sold his kids." Rose then dropped Troxell off at his mother's house. Rose's testimony was generally corroborated by several individuals, including Bruce Tucker.
 
 
 7
 Sheriff Joe Conn came to arrest Troxell shortly after Troxell arrived at his mother's home. The reason for Troxell's arrest was wholly unrelated to the three murders, and Conn did not mention to Troxell anything about the crime of murder. Conn testified at trial, however, that upon Troxell's arrest, Troxell stated, "I didn't kill nobody. I don't know nothing about it." The implication of this testimony, of course, was that since Sheriff Conn had not told Troxell about the murders, the only way Troxell could have known about the murders was if Troxell had committed them himself.
 
 
 8
 To explain how he knew of the murders before Conn arrested him, Troxell called his sister, Alice Stinson, as a witness. Stinson testified that she was on the telephone with Troxell when he was arrested. Before Stinson could testify concerning the substance of their conversation, the prosecution objected on the basis that Stinson's testimony was hearsay. The trial court sustained the objection. Stinson then finished her testimony by avowal. She stated that she had been told by a friend, Ina Brake, that there had been a murder at the Crabtree residence. Brake had learned this information by listening to her police scanner. Stinson called Troxell to relay this news. Stinson also told Troxell that he was being sought by the police in connection with the murder. It is unclear how Stinson knew Troxell was a suspect for the newly reported murder, or even whether Troxell was in fact a suspect at that time. Stinson finished her avowal by testifying that she and Troxell were discussing whether Troxell should turn himself in when Troxell saw Sheriff Conn arrive. Thus, Stinson's testimony establishes that only moments before Conn arrived, Troxell had been informed of the murders and had been told he was a suspect. This testimony rebuts the prosecution's implication that Troxell's knowledge of the murders could only have been obtained if Troxell was the murderer.
 
 
 9
 Troxell appealed his conviction. The Kentucky Supreme Court held that Stinson's testimony was not inadmissible hearsay and should have been admitted as relevant. However, the Kentucky Supreme Court further ruled that the trial court's error was harmless and affirmed Troxell's conviction. Troxell v. Commonwealth, No. 86-SC-1077-MR, slip. op. (Ky. Sept. 8, 1988).
 
 
 10
 Troxell petitioned for habeas corpus relief. The district court agreed with the Supreme Court of Kentucky and denied Troxell's petition for a writ of habeas corpus. The district court found that Stinson's testimony was not hearsay and should have been admitted, but that the exclusion of this evidence was harmless. Troxell v. Seabold, No. 89-225, slip op. (E.D.Ky. May 8, 1990) (adopting proposed findings of fact and recommendation of the magistrate judge). On this appeal, Troxell challenges the lower courts' holdings that exclusion of Stinson's testimony at trial was harmless error.
 
 II.
 
 11
 To affirm the district court's ruling, we must find that the trial court's error was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 24 (1967). "[E]rrors at trial, even constitutional errors, do not require automatic reversal of a conviction if the error can be classified as harmless." Coury v. Livesay, 868 F.2d 842 (6th Cir.1989) (citing Chapman, 386 U.S. at 22). "[H]armless error analysis essentially involves the question of whether the error is but a 'small error[ ] or defect that [has] little, if any, likelihood of having affected the result of trial.' " Eberhardt v. Bordenkircher, 605 F.2d 275, 279 (6th Cir.1979) (quoting Chapman, 386 U.S. at 22).
 
 
 12
 In light of the substantial direct and circumstantial evidence presented with regard to Troxell's actions and whereabouts on the night in question, we find that the uncontradicted implication from the testimony of Sheriff Conn had little, if any, likelihood of having caused the jury to return a guilty verdict. Darrell Rose and Bruce Tucker testified that they were with Troxell on the night of the murders, that Troxell had bought a .22 caliber rifle from Rose, that Troxell directed Rose to drop him off near the Crabtree residence and pick him up fifteen minutes later, and that upon picking up Troxell, Troxell told them that he had killed three people and would kill them, too, if they told anyone. Other witnesses confirmed that the three men were driving around together that night, that Rose had bought a .22 caliber rifle, that Troxell was carrying the rifle and looking for Sissy Crabtree, and that boot tracks were found running from the spot where Troxell had been dropped off to the Crabtree residence and back.
 
 
 13
 Furthermore, we note that Troxell's statement to Sheriff Conn, which Troxell insists decisively swayed the jury against him, does not imply Troxell's guilt as strongly as Troxell seems to believe. Troxell's theory at trial was that Darrell Rose and Bruce Tucker, who were witnesses against him, were the actual murderers. But Rose and Tucker admitted that they had spent the day with Troxell. The jury could have believed that Rose or Tucker was the murderer, and that Troxell's statement--"I didn't kill nobody. I don't know nothing about it."--revealed only that Troxell knew Rose or Tucker had committed the crime. The uncontradicted implication of Troxell's statement was not necessarily that Troxell was the murderer. The jury, however, did not credit Troxell's version of the facts.
 
 
 14
 In sum, we find that the evidence of guilt was overwhelming in this case, and there is no substantial possibility that the elimination of the trial court's error would have resulted in a different verdict. Based on the weight and totality of the evidence in the record, we find that the error in excluding the testimony of Ms. Stinson was harmless beyond a reasonable doubt.
 
 III.
 
 15
 For the foregoing reasons, we AFFIRM the judgment of the Honorable Eugene E. Siler, Jr.,** United States Chief District Judge for the Eastern District of Kentucky, denying petitioner's writ of habeas corpus.
 
 
 
 *
 Honorable Ann Aldrich, Judge of the United States District Court for the Northern District of Ohio, sitting by designation
 
 
 **
 Former United States District Judge, now, a United States Circuit Judge