4 F.3d 994
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Sonia Marie KING, Defendant-Appellant.
 No. 92-2278.
 United States Court of Appeals, Sixth Circuit.
 Sept. 10, 1993.
 
 Before: MARTIN and SUHRHEINRICH, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant-appellant, Sonia Marie King, appeals her conviction from the United States District Court for the Eastern District of Michigan, Southern Division. Defendant was indicted on two counts, viz., 1) violation of 21 U.S.C. Sec. 841(a)(1) & (2), aiding and abetting the distribution of Crack Cocaine; and, 2) violation of 18 U.S.C. Sec. 924(c)(1) & 2, using and carrying a firearm during, and in relation to, a drug trafficking crime. After a trial by jury, defendant was found guilty on both counts. She was sentenced to fifteen months on count one and sixty months (mandatory) on count two, each count to be served consecutively. Defendant filed a timely Notice of Appeal.
 
 I.
 
 2
 On June 1, 1990, Special Agent Joseph Slatella, of the Bureau of Alcohol, Tobacco, and Firearms (ATF), made an undercover drug purchase at a house in Detroit, Michigan. Agent Slatella had previously purchased drugs, in an undercover capacity, at that home. On this occasion, he was initially met by a woman on the front porch of the house. Agent Slatella indicated to her that he wished to purchase five rocks of crack cocaine for $50.00. She took him to the living room to wait. When Agent Slatella entered the living room, defendant was seated on the sofa, holding a shot gun. The shot gun rested on the floor, but was pointed upward, at an angle, towards Agent Slatella's groin. Defendant stated that it was her birthday and asked Slatella whether he would buy her a "birthday rock." Defendant also mentioned that her nickname was "Cupcake." No arrests were made on that occasion.
 
 
 3
 Agent Slatella was later shown a series of photographs by ATF Agent Philip Awe, for the purpose of identifying the individuals Slatella had observed in the house. Slatella identified four individuals, to-wit: defendant, who Slatella was absolutely certain was the person holding the shotgun; Grace Bomarito, who Slatella identified as the woman he had met on the porch and ushered him into the living room, and two other men whom Agent Slatella identified as having been in the house. All four were originally indicted. Ms. Bomarito pleaded guilty pursuant to an Alford plea. It was discovered that one of the men identified by Slatella was actually in prison at the time of the offense. Hence, the charges were dropped against that man.[1]
 
 
 4
 The government's case against defendant rested mostly on the identification testimony of Agent Slatella. A birth certificate was also introduced, which verified defendant's birthday as being June 1, the date of agent Slatella's visit to the crack house. Defendant took the stand and stated that she had been at her mother's house celebrating her birthday. Her mother and brother also testified to this fact. Defendant then called Agent Awe as a witness for the purpose of impeaching Agent Slatella's identification of defendant. Defense counsel asked Agent Awe about an omission from Slatella's report concerning defendant's alleged nickname ("Cupcake"). He also was asked about the procedures utilized in the photo display and any statements Slatella may have made. Defense counsel then attempted to inquire in detail about the report made by Slatella. At that point, the district judge refused to allow further questioning, on the basis that it was hearsay for Awe to testify about what Slatella had written. The judge indicated that he had given defense counsel latitude, but would allow the witness to testify only about what he did, not what was said or conveyed to him by others. Defense counsel was allowed to elicit testimony from Agent Awe concerning the imprisoned man whom Agent Slatella had misidentified.
 
 II.
 
 5
 Defendant contends the district court erred by unfairly limiting her right to effectively cross-examine a witness. Defendant further asserts that the information that defense counsel was attempting to solicit was not hearsay and thus proper.
 
 
 6
 Initially, it must be noted that defendant has mischaracterized the events. Agent Awe was called as a rebuttal witness by defendant to impeach the testimony of Agent Slatella. Therefore, defense questioning was on direct examination, not cross-examination. Nevertheless, it seems certain that Agent Awe would have been a hostile witness, allowing defendant greater latitude in her direct examination.
 
 
 7
 In consideration of defendant's arguments that the district judge improperly denied the questioning of Agent Awe, this court has recently discussed the proper standard of review that this court will use, holding as follows:
 
 
 8
 A district court's evidentiary determinations are subject to an abuse of discretion standard of review. See United States v. Rios, 842 F.2d 868, 872 (6th Cir.1988), cert. denied, 488 U.S. 1031, 109 S.Ct. 840, 102 L.Ed.2D 972 (1989). However, a district court's conclusions of law, such as whether proffered evidence constitutes hearsay within the meaning of the Federal Rules of Evidence, are reviewed de novo. United States v. Levy, 904 F.2d 1026, 1029 (6th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 974, 112 L.Ed.2d 1060 (1991).
 
 
 9
 Hancock v. Dodson, 958 F.2d 1367, 1371 (6th Cir.1992); See also, United States v. Blakeney, 942 F.2d 1001, 1020 (6th Cir.1991).
 
 
 10
 In the case sub judice, defendant did not attempt to articulate to the district court that the testimony was not hearsay or that it fit a recognized hearsay exception. Upon appeal, defendant claims that Agent Slatella was unavailable to answer questions. Hence, the questioning was proper under FED.R.EVID. 804(a)(3), which allows hearsay testimony when the declarant is unavailable. Defendant bases her argument on agent Slatella's response to a question under cross-examination concerning how Agent Awe identified pictures of possible suspects to include in the photographic array. Agent Slatella was asked whether Agent Awe, in choosing which pictures to include, first made a tentative identification of the defendants. Agent Slatella replied "[h]e may or may not have". According to defendant, since Agent Slatella could not answer this specific question, he was "unavailable", thus defendant should have been allowed to ask questions of agent Awe.
 
 
 11
 Defendant's assertion upon appeal that Agent Slatella was unavailable, is without merit. The fact that Agent Slatella did not know the answer to this one question does not qualify him as an unavailable witness. He was clearly available to testify to matters within his knowledge and could have been asked to explain the contents of his own report. Defendant failed to make such inquiries.
 
 
 12
 Defense counsel's direct examination of Agent Awe, however, presents a different problem. The questions to Agent Awe regarding the report prepared by agent Slatella were, in fact, hearsay. Fed.R.Evid. 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." This is exactly the type of information that defendant attempted to solicit from Agent Awe. Defense counsel asked Awe to state what Agent Slatella had written in his report. As was previously addressed, there was no reason these questions could not have been asked directly to Agent Slatella.
 
 
 13
 Nevertheless, it appears that the district court inappropriately limited some of the questions defense counsel was attempting to ask. For example, defense counsel attempted to inquire whether Agent Awe relied upon the information contained in Agent Slatella's written statement. As Agent Slatella's superior officer, it is indeed relevant whether Agent Awe found the information contained in the statement to be reliable. Considering the most damning evidence against defendant was the positive identification of defendant by Agent Slatella, Agents Awes reliance, or lack of it on Slatella's statement during the official investigation, was relevant.
 
 
 14
 Furthermore, Agent Slatella originally testified that he told Awe that he had reservations about his identification. He later testified that he told Awe he was certain in his identification. Defense counsel was entitled to explore this discrepancy, not for the truth of the matter asserted, which would be hearsay, but to impeach Agent Slatella's credibility by demonstrating to the jury that Agent Slatella had altered his testimony.
 
 
 15
 Errors at trial, do not, however, require reversal if they are harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 22 (1967); Coury v. Livesay, 868 F.2d 842 (6th Cir.1989). This court has held that the denial of the introduction of "testimony must constitute such an 'absence of ... fairness' that it 'fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial.' " United States v. Reifsteck, 841 F.2d 701, 705 (6th Cir.1988) (citations omitted ).
 
 
 16
 In the case at bar, the evidence that defense counsel was trying to elicit, viz., that Agent Slatella's identification may have been less than certain, did, in fact, reach the jury. The jury was thus in a position to note that Slatella's testimony regarding the certainty of his identification of defendant was inconsistent. The jury was told that one of the men identified by Slatella had actually been in prison during this time and could not have been present in the crack house. Finally, although Agent Awe's reservations, if any, on Agent Slatella's identification, were relevant to the manner in which the official investigation was conducted, they were far outweighed, at trial, by Agent Slatella's actual identification testimony that it was defendant who was present in the crack house. At no time did Agent Awe identify defendant as being in the crack house, nor could he have, since Agent Awe was the supervisor and not the undercover agent making the crack cocaine purchase.
 
 
 17
 In the end, the jury was left with the evidence that defendant shared the same birthday and the same nickname as the woman in the crack house; and Agent Slatella's identification of defendant, somewhat tainted by his misidentification of one of the men in the crack house. This was ample evidence for the jury to have convicted defendant. Error, if any, was harmless beyond a reasonable doubt.
 
 III.
 
 18
 The Order of the District Court is hereby AFFIRMED.
 
 
 19
 BOYCE F. MARTIN, Jr., Circuit Judge, dissenting.
 
 
 20
 This case presents a clear factual question of whether or not Special Agent Joseph Slatella was able to identify the defendant based on his observations at the time of the visit to the house located at 12848 Greiner. To me a reading of his testimony results in only one conclusion and that is that he did not and was not able to identify the defendant, Sonia Marie King, based on information at the time of the visit. In my opinion, his testimony was based solely on information that was pieced together after the event. Therefore, I believe that the identification was admitted improperly. I would have stricken the identification information which would have resulted in the fact that the defendant, King, was not identified by anyone else as being present. Agent Awe's testimony supports this conclusion. I, therefore, respectfully dissent and would reverse the conviction.
 
 
 
 [1]
 Apparently, charges were dropped against both of the men identified although the record is somewhat sketchy concerning the fate of both males. Nevertheless, this issue is not relevant to the appeal sub judice