IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

MAY 1999 SESSION

**FILED**

January 27, 2000

Cecil Crowson, Jr.
Appellate Court Clerk

GARY WILLIAM HOLT,            )
                             )        No. 03C01-9808-CR-00279
        Appellant,           )
                             )        Hamilton County
v.                           )
                             )        Honorable Douglas A. Meyer, Judge
STATE OF TENNESSEE,          )
                             )        (Post-Conviction)
        Appellee.            )

FOR THE APPELLANT:                    FOR THE APPELLEE:

JOHN ALLEN BROOKS                     JOHN KNOX WALKUP
736 Georgia Avenue                    Attorney General & Reporter
Suite 600
Chattanooga, TN  37402                R. STEPHEN JOBE
(Elbow Counsel)                       Assistant Attorney General
                                      425 Fifth Avenue North
GARY WILLIAM HOLT, pro se             Nashville, TN  37243-0493
TDOC #105031
South Central Correctional Center     WILLIAM H. COX, III
P. O. Box 279                         District Attorney General
Clifton, TN  38425-5346_____
                                      YOLANDA D. MITCHELL
                                      Assistant District Attorney General
                                      600 Market Street, Suite 310
                                      Chattanooga, TN  37402

OPINION FILED: _____

AFFIRMED

ALAN E. GLENN, JUDGE

# O P I N I O N

The petitioner, Gary William Holt, was convicted in 1977 in the McMinn County Criminal Court of armed robbery and sentenced to life imprisonment. Since the affirmance of the conviction on direct appeal, the petitioner has filed several petitions, either for writ of habeas corpus or for post-conviction relief, claiming various deficiencies in the conviction and sentencing. In this petition for post-conviction relief, he has appealed as of right from the dismissal of the petition following an evidentiary hearing. In his petition, he alleged that the bystander jury process utilized during the trial violated his rights to due process and to an impartial jury, that his claim of ineffective assistance of counsel had not been previously determined, and that he should have been allowed to prove his innocence of the charges for which he was convicted, to show the bias in the jury selection process. Based upon our review of this matter, as well as the applicable law, we affirm the decision of the court dismissing the petition.

## BACKGROUND

Following his conviction for armed robbery in August 1977, the petitioner was sentenced to life imprisonment. His conviction and sentence were affirmed on direct appeal by this court on March 2, 1979, and the Tennessee Supreme Court denied his petition for writ on certiorari on July 2, 1979. The United States Supreme Court denied certiorari on October 15, 1979.

Subsequently, the petitioner has filed several petitions for writ of habeas corpus or for post-conviction relief. Some of these petitions were referenced in the petition which is the basis for the appeal, and copies of others were made a part of the record by the State.

As his first petition for post-conviction relief, the petitioner, at some point after the unsuccessful direct appeal of his conviction, filed a petition in the McMinn County Criminal Court, making various claims of infirmities occurring during the trial of his case. According to the petitioner, the court dismissed that petition on April 21, 1980, without appointing counsel or conducting a hearing in the matter. He states that he appealed that dismissal, but the appeal was not transmitted to this court. Next, he filed a petition for writ of habeas corpus in the United States District Court for the Eastern District of Tennessee, that petition being dismissed without an evidentiary hearing on November 18, 1981. On October 8,

2

1982, the United States Court of Appeals for the Sixth Circuit affirmed the dismissal of that petition. On May 14, 1986, the petitioner then filed a second petition for post-conviction relief in the McMinn County Criminal Court. In that pleading, according to the petitioner, he claimed, among a number of grounds, that he had been denied his rights to an impartial jury and that he had received ineffective assistance of counsel at the trial. Counsel was appointed to represent the petitioner, and an evidentiary hearing was held on April 12, 1988. Before the court had entered its written findings and conclusions, the petitioner filed a motion to rehear, which was denied on May 9, 1988. Among the written findings and conclusions filed on June 10, 1988, by the court were the following:

> 3. Petitioner was not denied effective assistance of counsel. There has been no showing of anything of a prejudicial nature that trial counsel did or failed to do during the trial.
>
> 7. There was no conflict of interest between petitioner and his counsel and no denial of effective assistance of counsel on appeal.
>
> 9. An over all consideration of the entire record, indicated that the defendant was guilty of the crime for which he was convicted. That there was nothing that any lawyer could have done to have changed the results. The actions of the judge did not deny petitioner a fair trial.

The petitioner then appealed that dismissal to this court. Gary William Holt v. State, No. 1089, 1989 WL 12313 (Tenn. Crim. App., Knoxville, Feb. 15, 1989), perm. app. denied (Tenn. 1989). In this court's affirmance of the trial court's judgment dismissing the petition for post-conviction relief, we stated:

> The petitioner alleges that deficiencies in his attorney's preparation for trial and his performance at trial deprived him of his right to effective assistance of counsel. The State maintains that, under the facts and circumstances of this case, the petitioner has failed to meet his burden of proving that his attorney's performance did not meet required standards of professional competence under Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), or that the petitioner was adversely affected by any error his attorney might have committed. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
>
> As all of the above may be, this Court notes that the issue of ineffective assistance of trial counsel has been previously presented for appellate review in an unreported opinion styled Gary William Holt v. State, released at Knoxville on March 2, 1979. In short, therefore, petitioner's allegation has been previously determined. T.C.A. § 40-30-112. Moreover, the trial court, in a full hearing in which appellant and trial counsel testified, found that the question of trial counsel ineffectiveness was without merit. The trial court's findings have the weight of a jury verdict and are binding on this Court unless the evidence preponderates against that ruling. Janow v. State, 470 S.W.2d 19 (Tenn. 1971).

Id., 1989 WL 12313, at *1.

3

Between the rulings set out above of the post-conviction court and of this court, the dismissal of a petition for writ of habeas corpus filed by the petitioner was affirmed. Gary William Holt v. State, No. 20, 1989 WL 5971 (Tenn. Crim. App., Knoxville, Jan. 26, 1989). In that petition, filed in Bledsoe County, he had claimed that his sentence had not been computed correctly and that he was entitled to be released from custody. He filed another petition for writ of habeas corpus in the Davidson County Criminal Court, alleging that the conviction was void because of several violations of the United States Constitution and the Tennessee Constitution. The trial judge dismissed the petition, concluding that it should have been filed as a petition for post-conviction relief, for which the venue was McMinn County. This court affirmed that dismissal. Gary William Holt v. State, No. 89-227-III, 1990 WL 19761 (Tenn. Crim. App., Nashville, March 6, 1990), perm. app. denied (Tenn. 1990). He filed another petition for writ of habeas corpus in the Davidson County Criminal Court, presenting various constitutional claims as to his life sentence. The trial court dismissed that petition and this court affirmed that dismissal. Gary William Holt v. Ned McWherter, No. 01-C-01-9201-CR-00095, 1993 WL 207649 (Tenn. Crim. App., Nashville, June 11, 1993), perm. app. denied (Tenn. 1993). The petitioner also sought habeas corpus relief through the federal courts. Holt v. Reynolds, 47 F.3d 1169 (6th Cir. 1995) (appeal from grant of writ of habeas corpus in federal court).

As for the dismissal of the petition which is the basis for this appeal, this court entered its opinion on August 25, 1999, affirming the judgment of the lower court. We granted the petitioner's motion to reconsider and allowed both him and the State to file an additional brief. We will now consider the arguments and authorities set out in the pleadings by the petitioner and the State.

**ANALYSIS**

In the petitioner's trial, as the jury was being selected, the venire was exhausted and the trial judge gave the following instructions:

> Now, we are going to have to start picking up jurors, and I will direct the sheriff to direct one of his officers not involved in the trial of this case to pick up some jurors and we will have them here at one o'clock. Sheriff, I guess two ought to be enough to start with, and have some officer not involved to pick up two people and bring them here at one o'clock.

As the result of these instructions, two prospective jurors arrived at the court after the noon recess. One was excused after advising the trial court that she was sixty-six

years of age, had a "heart condition" and was "not very well." The other, Becky Dockery, who was employed at a store near the courthouse, was questioned by the trial judge prior to any questions being asked of her by the attorneys. The court asked her whether she had any firsthand knowledge of the case, whether anyone had talked to her about it, whether, as she was instructed to come to the courthouse as a possible juror, she had been told "what it was about or anything," and whether she had formed an opinion as to the guilt or innocence of the defendants. Ms. Dockery gave negative responses to each of these questions. Additionally, the court asked several questions to ascertain whether Ms. Dockery had any bias which would prevent her being an impartial juror. Counsel for the State and the defendants were then given the opportunity to question Ms. Dockery. Ms. Dockery was then seated as the final juror for the trial. Although counsel for the petitioner unsuccessfully challenged Ms. Dockery for cause, none of the attorneys involved in the case objected to this process whereby the two prospective jurors had been brought into the courtroom. A transcript of that trial, including the voir dire, was made a part of the record in this matter.

On August 29, 1997, the court held an evidentiary hearing on the petition for post-conviction relief, during which three individuals testified: Larry Wallace, McMinn County Sheriff at the time of petitioner's trial; Jerry Estes, petitioner's trial counsel; and, the petitioner himself. Although the petitioner was assisted by elbow counsel during the hearing, the court allowed him to argue his claims and cross-examine witnesses.

Wallace stated he did not recall a deputy selecting bystander jurors at the petitioner's trial. He testified that, under such circumstances, he would have instructed the deputies to "follow the letter of the law" in following the directions of the judge. Officers who were assigned to the courts were not assigned to investigate cases. Such officers received daily supervision from the court, even though they were technically employed by the sheriff's department. Further, he stated that Detective David Guy handled the majority of the investigation in the petitioner's case, and it would have been very unlikely for him to have worked with any of the court officers during an investigation. Further, he stated that, as best he could recall, none of the three or four courtroom deputies had been employed by Wallace's predecessor, who was the sheriff when the crime occurred and conducted the original investigation.[1]

---

[1]During his own testimony, which came after that of former Sheriff Wallace, the petitioner identified a Sergeant Sidney Matthews as being the person whom had both investigated the crime and summoned the bystander jurors. However, during his cross-examination of Wallace, the

The petitioner mischaracterizes the testimony of Wallace, claiming, for instance, that Wallace could not say that the deputy sheriff who brought the bystander jurors to the courtroom had not told them about the case. What Wallace actually said was that he had no way of knowing what the deputy said to the bystander jurors since he was not present. The petitioner also claims in his brief that the judge conducting the post-conviction hearing interrupted the petitioner's question to Wallace as to whether the deputy would have been instructed to pick "good citizens" and "answered the question for the Sheriff." In fact, the petitioner had asked that same question several times. The first time, Wallace responded that the deputies would have been instructed to "follow the letter of the law" and "accomplish their responsibilities in a professional, dignified manner." He said that, however, he did not specifically remember a conversation with the deputy who was sent out for the bystander jurors. The petitioner persisted in this line of questioning, suggesting that Wallace would not have wanted the deputy to bring a "wino" back to court. At that point, the judge added that it also would have been pointless for the deputy to have returned with a convicted felon, a 90-plus-year-old who had trouble getting around, or a 16-year-old. The judge suggested that the petitioner define "good citizen" and "bad people" after the petitioner had continued to ask Wallace questions regarding whether Wallace would have given the deputy "particular criteria for the selection process."

Estes testified he did not recall if a deputy summoned bystander jurors at petitioner's trial. Estes further stated he discussed voir dire tactics with counsel for a co-defendant and with petitioner. If any problems had arisen during the process, he would have raised the issue on appeal.

Petitioner testified he remembered that Sergeant Sidney Matthews was the deputy sent to summon jurors for his trial. Petitioner further stated Matthews was involved in the investigation of his case. During the hearing on his post-conviction petition, the petitioner testified that on the morning the jury was being selected, Sergeant Matthews came to court with "mud on his boots." The petitioner, who was in custody at the time of the trial, then testified, regarding the license plate which was to become Exhibit Four in the trial, that "five or six or seven of them [officers] that came back in and they were all muddy and everything and they had the license tag with them." He also testified that he was told by Sergeant Matthews that he had "been involved in getting, in combing the woods that morning and

_____

petitioner did not ask whether Matthews had been involved in the investigation, or, more specifically, had assisted in the recovery of the license plate.

6

looking for the license tag."

Matthews did not testify during the petitioner's trial.[2] The license plate, which the petitioner argues was located by a team of officers which included Sergeant Matthews, was admitted into evidence in the trial during the direct examination of Detective David Guy of the McMinn County Sheriff's Department. He testified that he found the license plate on the morning of his testimony "[a]t a location which was shown to [him] by a young lady by the name of Linda Wisecup."

Wisecup later testified as a prosecution witness and said that she accompanied the officer who recovered the license plate. When asked about its significance, she said that she had been present in a vehicle with her boyfriend, who was a co-defendant in the trial, the petitioner, and Lottie Gentry, the petitioner's girlfriend. As the four of them were in the vehicle, the co-defendant pulled the vehicle onto a side road, removed the license plate, and threw it into the woods.

Lottie Gentry testified in the trial that she had gone that same morning that she was testifying, following the vehicle in which Wisecup was riding, to the location where the license plate had been discarded. She rode in a vehicle driven by a law enforcement officer who was identified in the record as Martin Farris, Criminal Investigator for the Attorney General's Office. Although the license plate was admitted into evidence, it was not passed to the jury.

After considering the testimony presented at the post-conviction hearing, the trial court denied the petition for post-conviction relief. Petitioner timely appealed.

## DISCUSSION OF LAW

On appeal, petitioner presents two claims regarding the process whereby the final jury member was selected:

I.  The post-conviction court erred in not finding that the bystander juror selection procedure utilized in the instant case violated appellant's constitutionally secured due process rights.

II. The post-conviction court erred in not finding that the trial court was without jurisdiction to try the instant case when it failed to complete the trial by insuring the

---

[2]According to the petitioner, Matthews could not be located at the time of the evidentiary hearing in this matter and, therefore, did not testify.

7

> defendant his Sixth Amendment right to a fair and impartial jury.

The gravamen of these first two arguments goes to the process by which a "bystander," who was not a part of the venire, became the final juror in the petitioner's trial. In this regard, we understand the petitioner to be making two claims as to constitutional infirmities. He argues that his rights were violated both because the deputy who actually summoned the two bystander jurors had been involved in the investigation of the crime and that that deputy, as well as all other members of the sheriff's staff, were disqualified from summoning bystander jurors because, by virtue of their employment, they had an "institutional" bias favoring conviction. Petitioner argues the bystander juror summoning procedure violated both his due process and his Sixth Amendment rights.

Tennessee law provides for the trial court to obtain additional prospective jurors utilizing the bystander selection process. When a sufficient number of persons cannot be chosen from the venire, Tenn. Code Ann. § 22-2-308(a)(2) provides the court "may, if the judge thinks proper, direct the sheriff to summon a sufficient number [of potential jurors] to complete the jur[y]."

The "bystander jury" process has been scrutinized by the courts over the years in several different situations. It has long been the law in this state that prospective bystander jurors cannot be summoned by an officer with certain kinds of interest in the case. In Oliphant v. State, 153 Tenn. 130, 282 S.W. 206 (1926), our supreme court ruled that a sheriff and his deputies had a financial interest in the outcome of a prosecution for the violation of liquor laws which precluded their selecting and summoning bystander jurors. This financial interest resulted from the fact that one-half of the fines for such offenses went to the sheriff and his deputies as expenses for enforcing prohibition laws. However, in State v. Coury, 697 S.W.2d 373, 378-79 (Tenn. Crim. App.), perm. app. denied (Tenn. 1985), this court held the bystander jury selection procedure employed at trial was not grounds for reversal where the defendant was not forced to accept an incompetent juror. In an appeal from a denial of a writ of habeas corpus arising out of the same case, the Sixth Circuit addressed the constitutionality of Tennessee's bystander jury statute. See Coury v. Livesay, 868 F.2d 842 (6th Cir. 1989). The Sixth Circuit held the bystander juror selection process used in Coury did not deprive the defendant of any constitutional rights. Coury, 868 F.2d at 845. In selecting prospective jurors, individuals were chosen in a random, objective manner. Further, the investigating officers involved in Coury's case did

8

not personally execute the judge's order, but rather delegated this responsibility to another division of the sheriff's department, one not involved in investigation or prosecution of any defendant. Id. For these reasons, the Sixth Circuit held, under the facts of Coury's case, the bystander jury process as applied was not unconstitutional. Id.[3]

In the case *sub judice*, there is no indication from the record before us that the bystander jury procedures were applied unconstitutionally. Wallace testified that a sheriff's deputy assigned to the court was likely the person who selected the two potential jurors, and that such a person would not have been involved in the investigation or prosecution of cases. During voir dire, Dockery, the bystander juror seated on the panel, stated she did not know what the case was about, nor had anyone spoken to her about the case. Although at the post-conviction hearing the petitioner stated the deputy who selected the two potential jurors was involved in the investigation of his case, petitioner provided no evidence other than his own testimony. The petitioner, claiming that Sergeant Matthews told him of his involvement in searching for the license plate, combines this alleged statement with the fact that he observed mud on Matthews's shoes the morning of the trial and concludes that Matthews was "involved" in the investigation. However, trial testimony of Detective David Guy, Linda Wisecup, and Lottie Gentry was that the license plate was recovered when the three of them, accompanied by Martin Farris, an investigator from the District Attorney's office, went that morning to the location where the plate had been discarded by the defendants. Thus, testimony of three trial witnesses rebuts the petitioner's claim that Matthews was part of a team of officers that recovered the license plate. Additionally, the record shows Matthews did not testify at petitioner's trial. Even if the petitioner's allegation that Sergeant Matthews and a number of other deputies had searched for and secured the license plate was true, Matthews's role in the case would have been so minimal as to be like that of the coroner in Cody v. Solem, 755 F.2d 1323,1335 (8th Cir. 1985), cert. denied, 474 U.S. 833, 106 S.Ct.104, 88 L.Ed.2d 84, who had been at the crime scene, conducted an autopsy on the victim, and later selected a bystander juror. However, no violation of the South Dakota bystander jury selection process had occurred, the coroner's "minimal role, considered in a constitutional context, simply does not rise to the level of active investigation." Cody, 755 F.2d at 1335.

Much of the petitioner's argument is based upon Coury v. Livesay, 868 F.2d 842

[3]In its opinion released on March 7, 1988, the lower court had also held that the bystander juror selection procedure had not violated the rights of the defendant. Coury v. Livesay, 707 F.Supp. 961 (M.D. TN. 1988).

9

(6th Cir. 1989), which considered the Tennessee bystander jury selection process. However, that holding does not support the petitioner's claim that a violation can result from "institutional interest," meaning that if a sheriff is interested in the outcome of a criminal proceeding, a sheriff's employee, by virtue of his or her employment, is also "interested:"

> The common thread running throughout these cases establishes that where the sheriff participates in the investigation and also selects bystander jurors based on subjective criteria, the defendant's right to a fundamentally fair trial is violated, however, where the individual who selects the prospective jurors was not involved in investigating the case and uses objective criteria in selecting standby jurors, the process does not deprive the defendant of his constitutional rights. We believe this rule sufficiently protects a defendant's right to a fair and impartial trial. While the investigating officer should not be allowed to select prospective jurors, a defendant's rights are not necessarily transgressed because the potential exists that individuals responsible for obtaining additional jurors possess an institutional interest in conviction. We believe a case-by-case analysis must be made to determine the extent of any actual prejudice caused by the manner in which additional jurors are obtained.

Id. at 845 (citations omitted).

In the case *sub judice*, denying the petitioner's claim regarding the bystander juror selection process, the court held:

> The then sheriff did not personally execute the judge's order to summon bystander jurors. A deputy sheriff who served as a court officer, under the various judges of McMinn County, summoned the bystander jurors. The then sheriff only had an "institutional interest" in seeing that the defendant was convicted, and that interest alone is not enough to deprive a defendant of his due process rights.

Any conflicts in testimony, and other evidence presented, are properly resolved by the trier of fact. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Those factual findings are conclusive on appeal unless the evidence in the record preponderates against them. State v. Buford, 666 S.W.2d 473, 475 (Tenn. Crim. App. 1983), perm. app. denied (Tenn. 1984). Applying the facts of the case *sub judice* to the rules propounded in our decision in State v. Coury and the Sixth Circuit decision in Coury v. Livesay, we find no error in the trial court's decision to deny post-conviction relief based upon the summoning of the bystander jurors. Even if the petitioner's claims were true as to Sergeant Matthews's involvement, his participation would have been so *de minimus* that it did not affect the petitioner's constitutional rights. As to the claim that the entire sheriff's department was disqualified from selecting bystander jurors because of "institutional interest," neither the facts of this case nor the law would support such a claim.

The facts of this case are nearly identical to those of <u>James B. Proctor v. State</u>, No. 01-C-01-9011-CC-00307, 1991 WL 136342 (Tenn. Crim. App., Nashville, July 26, 1991), <u>perm</u>. <u>app</u>. <u>denied</u> (Tenn. 1991), in which the petitioner claimed that his rights had been violated when the Hickman County Sheriff had summoned bystander jurors after the regular venire had been exhausted. Proctor also said that he had not been aware of this particular issue until the decision of the Court of Appeals for the Sixth Circuit in <u>Coury</u>. Noting, however, that Proctor had cited the decision in <u>Oliphant</u> in support of his petition (as did the petitioner in the case *sub judice*), the court held that even if it were to ignore the matter of the appellant's waiver for not raising the issue in a previous post-conviction petition, "there was not a shred of evidence or even a realistic allegation of any prejudice or bias to the appellant from this procedure." <u>Id</u>. at *2. The allegations in the case *sub judice*, likewise, fail to allege any prejudice or bias.

This assignment is without merit.

> III. The post-conviction court erred in refusing to allow appellant to argue that he had received ineffective assistance of counsel at the trial of this case on the premise that the ground for relief had been previously determined.

The petitioner argues the trial court erred in refusing to allow him to argue and present evidence that he received ineffective assistance of counsel at trial.

The Post-Conviction Relief Act provides a ground for relief is previously determined "if a court of competent jurisdiction has ruled on the merits after a full and fair hearing." Tenn. Code Ann. § 40-30-112(a) (repealed 1995). The State correctly asserts the issue of ineffective assistance of counsel was determined during the proceedings for petitioner's second petition for post-conviction relief. In the evidentiary hearing held as the result of that petition, in which both the petitioner and his trial counsel testified, the trial court found his claim of ineffective assistance of counsel was without merit. This court affirmed the trial court's judgment on appeal, noting additionally in our opinion that the petitioner had also raised the claim of ineffective assistance of counsel in his direct appeal. <u>Gary William Holt v. State</u>, No. 1089, 1989 WL 12313 (Tenn. Crim. App., Knoxville, Feb. 15, 1989), <u>perm</u>. <u>app</u>. <u>denied</u> (Tenn. 1989). Now, the petitioner argues his ineffective assistance of counsel claim did not arise until the Sixth Circuit's decision in <u>Coury v. Livesay</u>, issued February 23,

1989.[4] However, as petitioner's present petition states, his claim arose from the language of the Tennessee Supreme Court's decision in Oliphant v. State, 153 Tenn. 130, 135, 282 S.W.2d 206, 209 (1926) (disqualifying sheriff and deputies from summoning jurors in certain cases), issued April 10, 1926.

The petitioner cannot raise such complaints of ineffective assistance of counsel based upon alleged new claims when the legal basis for such claims predated his first complaints against counsel. The 1926 holding of our supreme court in Oliphant made it clear that a sheriff or deputy sheriff with an "interest" in the prosecution could not participate in the bystander jury selection process. Although the petitioner here is claiming a different kind of "interest," the principle of law remains the same.

Petitioner was afforded an opportunity to present his constitutional claims in a full and fair hearing in a previous petition[5] for relief and is therefore barred from doing so here. See House v. State, 911 S.W.2d 705, 710-13 (Tenn. 1995) (barring second petition for post-conviction relief alleging ineffectiveness of trial counsel as previously determined because petitioner received a "full and fair hearing" on his original post-conviction petition, which also alleged ineffectiveness of counsel). This assignment is without merit.

> IV. The post-conviction court erred in refusing to allow the appellant to establish his actual innocence as a part of his proof to show that he suffered actual bias in the juror selection utilized at his trial.

Here, petitioner argues the trial court erred in refusing to allow him to present testimony concerning the evidence supporting his conviction. According to petitioner, he offered this testimony to establish his innocence in order to overcome any procedural default and to establish that he was biased as the result of the juror selection process. Petitioner has failed to cite a specific portion of the record in which he finds error. Accordingly, he has waived consideration of the issue in this appeal. Tenn. Ct. Crim. App. R. 10(b); State v. Killebrew, 760 S.W.2d 228, 231 (Tenn. Crim. App.), perm. app. denied (Tenn. 1988).

Additionally, with regard to petitioner's claim that his testimony was offered to

---

[4]We note, however, that the District Court opinion, ruling upon the same issue, was filed on March 7, 1988. See Coury v. Livesay, 707 F. Supp. 961 (M.D. Tn. 1988).

[5]The evidentiary hearing on the previous petition for post-conviction relief occurred on May 9, 1988, two months after the release of the opinion of the United States District Court in Coury.

establish his actual innocence to overcome a procedural default, it is clear that post-conviction proceedings cannot be used to litigate the sufficiency of the evidence. Workman v. State, 868 S.W.2d 705, 711 (Tenn. Crim. App.), perm. app. denied (Tenn. 1993); see Rust v. Zent, 17 F.3d 155, 162 (6th Cir. 1994) (stating federal court may grant habeas relief if petitioner presents extraordinary case whereby constitutional violation resulted in conviction of innocent defendant, in such case procedural failures in state court may be overlooked).

This assignment has no merit.

For the foregoing reasons, we affirm the decision of the court below.

_____
ALAN E. GLENN, JUDGE

CONCUR:


_____
GARY R. WADE, PRESIDING JUDGE


_____
JOHN EVERETT WILLIAMS, JUDGE